CORRIGAN, J.,
Concurring and Dissenting. — The majority reasons that “[t]o avoid substantial First Amendment concerns associated with criminalizing speech, we construe the offense of attempted criminal threat to require proof that the defendant had a subjective intent to threaten and that the intended threat under the circumstances was sufficient to cause a reasonable person to be in sustained fear.” (Maj. opn., ante, at p. 525.) The majority posits that avoidance of constitutional concerns requires us to assume that an objective threat is an element of an attempted criminal threat. The facts of this case do not raise this issue. Yet the majority reaches out to add an element and to create an instructional duty in every case. I respectfully decline to join this expansion.
The majority’s conclusion stems from a misapplication of the doctrine of constitutional avoidance. This canon of interpretation applies to ambiguous statutes: “When a question of statutory interpretation implicates constitutional issues, we are guided by the precept that ‘ “[i]f a statute is susceptible of two *527 constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable.” ’ ” (People v. Gutierrez (2014) 58 Cal.4th 1354, 1373 [171 Cal.Rptr.3d 421, 324 P.3d 245]; see People v. Leiva (2013) 56 Cal.4th 498, 506-507 [154 Cal.Rptr.3d 634, 297 P.3d 870].) To apply this canon, however, “the statute must be realistically susceptible of two interpretations.” (People v. Anderson (1987) 43 Cal.3d 1104, 1146 [240 Cal.Rptr. 585, 742 P.2d 1306].) As the high court has cautioned, in the context of interpreting a federal statute: “The canon is not a method of adjudicating constitutional questions by other means. [Citations.] Indeed, one of the canon’s chief justifications is that it allows courts to avoid the decision of constitutional questions. It is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts.” (Clark v. Martinez (2005) 543 U.S. 371, 381 [160 L.Ed.2d 734, 125 S.Ct. 716], second italics added.)
Here, no ambiguity justifies application of the doctrine. Neither the substantive criminal threats statute (Pen. Code,[1] § 422) nor the general attempt statutes (§§ 21a, 664) suggest in any way that an objective threat must be an element of an attempted criminal threat. Section 422, subdivision (a) requires that, to complete the crime of making a criminal threat, a statement “on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family’s safety . . . .” Thus, the completed crime requires an objectively threatening statement. But section 422, like most substantive criminal statutes, does not address attempts.
In recognizing the crime of attempted criminal threats, People v. Toledo (2001) 26 Cal.4th 221 [109 Cal.Rptr.2d 315, 26 P.3d 1051] (Toledo) discussed two ways in which an attempt to criminally threaten might be ineffectual: (1) The defendant’s threat was intended to cause fear, but it was not actually conveyed because it was intercepted, unheard, or not understood; (2) the threat was intended to cause fear, but did not actually make the intended victim fearful. (Id. at p. 231.) There is another way in which an intended threat may be ineffectual and thus reduce the crime to an attempt. A defendant may intend to put the victim in reasonable fear but choose an insufficient threat. In such a circumstance, he could not be convicted of a *528 completed crime. But he could be convicted of an attempt in the same way that an intended poisoner can be guilty of an attempted murder even if he chooses an ineffective poison.
Indeed, Toledo itself applied the general law of attempt: “[I]t would appear to follow as a matter of course that there is a crime of attempted criminal threat in this state, defined through the interplay of section 422 and the statutory provisions relating to attempts. As we have seen, section 664, by its terms, provides that ‘[e]very person who attempts to commit any crime’ (italics added) is subject to the criminal punishment set forth in that provision, and this language on its face thus includes those who attempt to commit the crime of criminal threat set forth in section 422.” (Toledo, supra, 26 Cal.4th at p. 230.) Section 21a provides that “[a]n attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.” “Under the provisions of section 21a, a defendant properly may be found guilty of attempted criminal threat whenever, acting with the specific intent to commit the offense of criminal threat, the defendant performs an act that goes beyond mere preparation and indicates that he or she is putting a plan into action.” (Toledo, at p. 230.) “In other words, we have explained, the act must represent ‘ “some appreciable fragment of the crime.” ’ ” (People v. Watkins (2012) 55 Cal.4th 999, 1021 [150 Cal.Rptr.3d 299, 290 P.3d 364].)
When a defendant acts with the required intent and takes a direct but ineffectual step toward the completion of that crime, he commits an attempted crime. His intent must be to cause sustained and reasonable fear. It is the ineffectual nature of his act — as posited here, an insufficiently fear-inducing threat — that makes his offense an attempt rather than a completed crime.
The majority acknowledges that the law of attempt is replete with examples of cases affirming convictions for attempting to commit a crime where the defendant could not have completed the offense. (Maj. opn., ante, at p. 517; see, e.g., People v. Pham (2011) 192 Cal.App.4th 552, 560-561 [121 Cal.Rptr.3d 458] [“[Defendant cannot escape liability for his attempt to kill [the victims] just because, contrary to his belief, it turned out his intended victims were not where he thought they were. His crimes were complete when, with the intent to kill the two teenagers, he fired shots into a group in which he thought they were.”]; People v. Reed (1996) 53 Cal.App.4th 389, 396-397 [61 Cal.Rptr.2d 658] [affirming attempted child molestation conviction where the defendant was involved in a sting which involved no actual children]; People v. Ross (1988) 205 Cal.App.3d 1548, 1554 [253 Cal.Rptr. 178] [substantial evidence of attempted false imprisonment where the defendant put threatening notes on the victims’ cars, rejecting claim that “present ability or personal presence is a prerequisite to the crime of attempted false *529 imprisonment”]; People v. Siu (1954) 126 Cal.App.2d 41, 44 [271 P.2d 575] [affirming conviction of attempted possession of narcotics where the defendant, in a sting operation, received talcum powder he believed was heroin]; see also In re Ryan N. (2001) 92 Cal.App.4th 1359, 1380-1384 [112 Cal.Rptr.2d 620] [substantial evidence of an attempt to assist a suicide where the defendant encouraged the victim to take pills that were not actually lethal]; People v. Thompson (1993) 12 Cal.App.4th 195, 202-203 [15 Cal.Rptr.2d 333] [the defendant could be convicted of attempted rape for having sex with a victim he believed was alive but was actually dead]; People v. Meyer (1985) 169 Cal.App.3d 496, 503-506 [215 Cal.Rptr. 352] [affirming conviction for attempting to furnish a substance for manufacture of a controlled substance where the defendant sold methylamine to an undercover officer erroneously believing it would be used to manufacture methamphetamine]; cf. People v. Rojas (1961) 55 Cal.2d 252, 256-258 [10 Cal.Rptr. 465, 358 P.2d 921] [the defendants could be convicted of attempting to receive stolen property by receiving items they believed to be stolen but that had actually been recovered by police]; People v. Parker (1963) 217 Cal.App.2d 422, 427-429 [31 Cal.Rptr. 716] [affirmed conviction for attempted receiving stolen property where items were not actually stolen].)
The majority also acknowledges that “the commission of an attempt does not require proof of any particular element of the completed crime.” (Maj. opn., ante, at p. 517; see People v. Scott (2011) 52 Cal.4th 452, 488 [129 Cal.Rptr.3d 91, 257 P.3d 703] [attempted rape]; People v. Lindberg (2008) 45 Cal.4th 1, 30 [82 Cal.Rptr.3d 323, 190 P.3d 664] [attempted robbery]; see also People v. Dillon (1983) 34 Cal.3d 441, 454-455 [194 Cal.Rptr. 390, 668 P.2d 697].) Indeed, the majority observes that “[t]hose principles, without more, tend to suggest that a statement that is intended as a threat, but is ineffectual as such, may fall within the scope of an attempted criminal threat.” (Maj. opn., ante, at p. 518.) These principles do more than simply “suggest” an objective threat is not an element of an attempted criminal threat. Applying the black letter law of attempt leads inexorably to the conclusion that no particular element of the completed criminal threat offense, including use of an objectively reasonable threat, is required to prove an attempt. Until today, a jury considering a charge of attempted criminal threat would be instructed upon the completed offense, then given the general instruction regarding attempts, just like in any other attempt case. These instructions convey the requirements that the defendant act with a specific intent to commit the offense and perform an ineffectual act toward its commission. (See CALCRIM Nos. 1300 (Criminal Threat), 460 (Attempt Other Than Attempted Murder); see also CALJIC No. 9.94.1 (Attempted Criminal Threats).)
Based upon the settled law of attempts, which the majority emphasizes it does not disturb (see maj. opn., ante, at p. 518), there is simply no statutory *530 ambiguity to interpret. The majority suggests otherwise: “Neither Toledo nor the language of sections 21a and 422, subdivision (a) makes clear whether an attempted criminal threat requires a specific intent to make a threat that is objectively sufficient to cause the victim reasonably to be in sustained fear or whether it is enough that the offender subjectively intends the threat to be sufficient to cause the victim reasonably to be in sustained fear. The latter is a plausible construction of the criminal attempt statute as applied to section 422. But the former is also plausible on the ground that if reasonableness were purely a matter of subjective belief instead of an objective standard, then a ‘specific intent’ (§ 21a) to cause a ‘person reasonably to be in sustained fear’ (§ 422, subd. (a), italics added) would be no different than a specific intent to simply cause a person to be in sustained fear, with the word ‘reasonably’ omitted. The ambiguity arises from the application of the term ‘specific intent’ in section 21a to the word ‘reasonably’ in section 422.” (Maj. opn., ante, at p. 516.)
This reasoning fails for two reasons. First, the majority discerns a potential ambiguity over the nature of the specific intent required. However, that is not the issue here. The question here is not whether defendant acted with specific intent. The issue here is whether an objective evaluation of the threat defendant intended to make is required to convict of attempted criminal threat. As noted, on the latter point there is no statutory ambiguity: The settled law of attempt does not require proof of any particular element of the completed offense. Indeed, if the statutes pertaining to attempted criminal threat aré ambiguous on this point, then virtually all attempt crimes would be similarly ambiguous because substantive criminal statutes are ordinarily silent regarding what is required to constitute an attempt to violate its provisions. Any criminal attempt requires a specific intent to commit the crime attempted.
Second, and more fundamentally, the cited ambiguity is not one derived from the relevant statutes. Rather, any uncertainty regarding the elements of attempted criminal threat stems from whether the First Amendment to the United States Constitution requires an objective threat to keep that offense from being overbroad and potentially infringing upon protected speech, a question the majority purports not to answer here. Toledo declined to decide “whether the crime of attempted criminal threat properly should be interpreted to reach circumstances in which the defendant has not yet actually made the type of threat prohibited by section 422.” (Toledo, supra, 26 Cal.4th at p. 234.) This issue only arose there in the context of the defendant’s claim that the crime of attempted criminal threat would be “unconstitutionally overbroad because that crime assertedly may reach speech beyond that which is penalized by the criminal threat provision.” (Id. at p. 233.) Toledo ultimately rejected the overbreadth claim because “in virtually all, if not all, of its applications, the crime of attempted criminal threat will *531 apply only to speech that is not constitutionally protected.” (Id. at p. 235.) Toledo did not suggest that the language of section 422, 664, or 21a created some ambiguity as to whether an objective threat was an element of attempted criminal threat.
Consistent with this understanding of Toledo, defendant argues the First Amendment requires that we engraft an objective threat requirement onto attempted criminal threat in order to make that offense constitutional. He argues: “Just as a statement must be viewed objectively from the point of view of a reasonable person in determining whether it constitutes a criminal threat, an attempted criminal threat must be viewed from the same perspective, in order to insure that punishment will apply only to speech that clearly falls outside First Amendment protection.” Further, defendant relies principally upon People v. Jackson (2009) 178 Cal.App.4th 590 [100 Cal.Rptr.3d 539], a case that so concluded: “By insisting that the intended threat be evaluated from the point of view of a reasonable person under the circumstances of the case, we can insure that punishment will apply only to speech that clearly falls outside First Amendment protection.” (Id. at p. 598.)
The well-established doctrine applicable here is this: “As a general rule, courts will not reach constitutional questions ‘unless absolutely necessary to a disposition’ of the case before them [citation], and we could decline to consider the issue in the abstract and instead await its resolution within the framework of an actual controversy . . . .” (Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208, 233 [149 Cal.Rptr. 239, 583 P.2d 1281]; see Santa Clara County Local Transportation Authority v. Guardino (1995) 11 Cal.4th 220, 230-231 [45 Cal.Rptr.2d 207, 902 P.2d 225]; Palermo v. Stockton Theatres, Inc. (1948) 32 Cal.2d 53, 66 [195 P.2d 1]; Estate of Johnson (1903) 139 Cal. 532, 534 [73 P. 424].) Notwithstanding its lengthy constitutional discussion, the majority correctly declines to decide the constitutional issue. Simply put, the facts here do not implicate the question. Defendant threatened to kill both victims and, as the majority recognizes, “no reasonable juror could have failed to find defendant’s threats sufficient under the circumstances to cause a reasonable person to be in sustained fear.” (Maj. opn., ante, at p. 525.) Thus, this case can, and should, easily be resolved on nonconstitutional harmless error grounds.
Because we are not deciding the constitutional question, and the case can be resolved on nonconstitutional grounds, there is no justification for assuming that an objective threat is an element of the offense and further concluding that trial courts must now instruct on the element in every case. “A criminal offense is ... a collection of specific factual elements that the Legislature has chosen to define as a crime.” (People v. Anderson (2009) 47 Cal.4th 92, 101 [97 Cal.Rptr.3d 77, 211 P.3d 584].) “Needless to say, it is the *532 task of the Legislature, and not the courts, to define crimes and thus fix their elements.” (People v. Moretto (1994) 21 Cal.App.4th 1269, 1278 [26 Cal.Rptr.2d 719].) Judicial restraint counsels against reading an element into an offense when we have not determined that course is constitutionally required. I dissent from that portion of the majority opinion purporting to do so.
Baxter, J., and Chavez, J.,* concurred.
Appellant’s petition for a rehearing was denied October 1, 2014.

 Subsequent undesignated statutory references will be to the Penal Code.

Associate Justice of the Court of Appeal, Second Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.